Commonwealth *v.* Santiago, Appellant.

Submitted March 13, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*A. L. Gambatese,* for appellant.

*Frank L. Kroto, Jr.,* Assistant District Attorney, and *R. Gordon Kennedy,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE MANDERINO, April 23, 1974:

The appellant, Miguel Maldonado Santiago, was convicted in 1963 of first degree murder. Post-verdict motions were filed but later withdrawn and a sentence of life imprisonment was imposed. No appeal was filed. Collateral proceedings followed which are reported in *Commonwealth ex rel. Santiago v. Myers,* 440 Pa. 543, 271 A. 2d 216 (1970), and *Commonwealth ex rel. Santiago v. Myers,* 419 Pa. 326, 214 A. 2d 206 (1965). In 1970, following an evidentiary hearing ordered by this Court, the trial court found that the appellant had not waived his post-verdict rights or his appeal rights and granted those rights to the appellant. Post-verdict motions were then filed and denied. This appeal followed in which we reverse the judgment of sentence and grant a new trial.

Appellant was charged with the murder of Domingo Alvarez, who was shot in a barroom fight. The selection of the jury began on September 16, 1963, and was completed the following day, September 17, 1963. At about 2:00 p.m., on September 17, 1963, the prosecution made its opening statement. After two witnesses for the prosecution had testified, the trial court, at about 3:15 p.m., announced a fifteen minute recess. In the ladies room, during that recess, one of the alternate jurors, Anne McCarthy, in the presence of three other female jurors, reported to a female tipstaff an incident which had occurred in the ladies room during the luncheon recess several hours earlier in the day. The tipstaff, after telling the jurors not to talk about the incident with any other jurors, reported to the trial judge, who then informed counsel at side bar about the reported incident. Defense counsel immediately moved for a mistrial, but the motion was denied. The trial judge then said to the jury: "Members of the jury, a matter has come up that will take a little time. You will not be excused and you will not be recessed for the

time being. Arrange for the defendant to be taken into my chambers with the interpreter."

The alternate juror was then called into chambers and reported the following incident which occurred during the luncheon recess just before she was sworn as a juror: "We came back from lunch and we walked in and didn't really know what time it was, another girl and myself, who was excused, or rejected I guess, and we turned around and looked at the clock and said, 'we have lots of time, it is only ten after one,' and this woman sitting there said, 'no, you don't have lots of time.' I said, 'well, it starts at 1:30,' and she said, 'yes,' and then that was all that was said, and with nothing else, she said, *'he has killed an innocent boy and it isn't the first one he has killed,'* and I looked at her and we just walked away from her. She said, *'I am a witness.'* " (Emphasis added.)

The alternate juror said that she did not know the witness's name, but could identify the witness who was sitting out in the courtroom. The trial court indicated to counsel that the alternate juror would be excused but again denied defense counsel's request for a mistrial. The trial judge then called into chambers, one at a time, the three jurors who were in the ladies' room when the alternate juror reported the incident to the tipstaff. One juror said that she heard the alternate juror say that "she was approached by one of the witnesses saying that the defendant had killed somebody else, too, or had shot somebody else—wasn't that it?—I thought you said shot or killed—killed somebody else." The second juror said she heard the alternate juror say "that she was talking to a lady in the back and that she said that he was a killer and that he had killed somebody else." The third juror said "she [the alternate juror] said that this woman . . . started talking about the defendant and said that this wasn't the first time that he had been in trouble and, I don't know, she made

some remarks about him to [the alternate juror]." Two of the three jurors, when questioned, indicated they would not be prejudiced against the defendant as a result of what they had heard. The third juror also indicated that she would not be prejudiced, but at one point when questioned by defense counsel about the possibility that what she had heard would make a difference, the juror said "well, maybe."

The alternate juror was then excused from the jury but defense counsel's renewed request for a mistrial was denied. After the alternate juror had identified a prosecution witness as the person who made the prejudicial remarks, the prosecuting attorney informed the trial judge that the witness identified was "not an absolutely mandatory witness and doesn't need to be called." The record does not specifically indicate whether the witness was later called. The witness is not identified in the record but, apparently, the witness was not called by the prosecution during the trial.

We conclude that defense counsel's request for mistrial should have been granted. "The minimal standards of constitutional due process guarantees to the criminally accused a fair trial by a panel of impartial and 'indifferent' jurors. . . ." *Commonwealth v. Stewart,* 449 Pa. 50, 52, 295 A. 2d 303, 304 (1972). *See also Commonwealth v. Bobko,* 453 Pa. 475, 309 A. 2d 576 (1973). "Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula." *United States v. Wood,* 299 U.S. 123, 145, 146, 81 L. Ed. 78, 88, 57 S. Ct. 177, 185 (1936). "The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." *Pat-*

*terson v. Colorado,* 205 U.S. 454, 462, 51 L. Ed. 879, 881, 27 S. Ct. 556, 558 (1907).

In *Stewart* and in *Bobko,* convictions were reversed even though there was no certainty that any improper prejudicial information had actually been communicated to any jurors. In those cases, contacts with the jury occurred which may have resulted in the communication of prejudicial information to jurors. In *Stewart,* the victim's father had been on the panel of jurors from which the trial jury had been selected, but there was no evidence that he had communicated with any of the trial jurors. In *Bobko,* the jury had been given a trial booklet indicating that the defendant and his co-defendants were under indictment for charges unrelated to those for which the jury had been selected, but there was no evidence that any jurors had read the trial booklet. In *Turner v. Louisiana,* 379 U.S. 466, 13 L. Ed. 2d 424, 85 S. Ct. 546 (1965), prejudice to the defendant was presumed when two prosecution witnesses who were deputy sheriffs, were in continual contact with the jury freely mingling and conversing with them. The defendant's conviction was reversed notwithstanding the lack of evidence with regard to whether the deputies had discussed the case with the jurors.

In this case, unlike *Stewart, Bobko,* and *Turner,* we know, without speculation, that three jurors during the trial did receive improper prejudicial information. In *Marshall v. United States,* 360 U.S. 310, 3 L. Ed. 2d 1250, 79 S. Ct. 1171 (1959), during the trial, certain jurors were exposed to newspaper articles containing information about the defendant's prior criminal record. When questioned by the trial court, the jurors indicated that they could proceed in spite of what they had read and serve impartially. The defendant's conviction was reversed. The Court saying that "the prejudice to the defendant is almost certain to be as great when . . . evidence reaches the jury through news ac-

counts as when it is a part of the prosecution's evidence. [Cite omitted.] It may indeed be greater for it is then not tempered by protective procedures." *Id.* at 313, 3 L. Ed. 2d at 1252, 79 S. Ct. at 1173.

In this case the remarks heard by the three jurors would not have been admissible during the trial, and their admission, over objection, would have constituted reversible error. The prejudice to the appellant is no less when the remarks are made outside the courtroom. The appellant was entitled to an impartial and indifferent jury. His motion for a mistrial should have been granted. There is no need to consider other issues by the appellant.

Judgment of sentence reversed and a new trial awarded.