393 A.2d 1112

**COMMONWEALTH of Pennsylvania**

v.

**Nathaniel LARK, Appellant.**

Supreme Court of Pennsylvania.

Reargued Oct. 17, 1977.

Decided Oct. 6, 1978.

Reconsideration and/or Clarification Denied Nov. 27, 1978.

Zack, Myers & Atkinson, Nolan N. Atkinson, Jr., Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Michael R. Stiles, Asst. Dist. Atty., Chief, Appeals Division, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

294

## ORDER

Messrs. Justice O'Brien, Roberts, and Manderino would reverse the judgment of sentence and grant a new trial because of the refusal of the trial judge to charge the jury on the law of voluntary manslaughter as requested by the defendant.

Messrs. Justice Nix, and Manderino would reverse the judgment of sentence and grant a new trial believing that an effective waiver was not established so as to permit the introduction into evidence of appellant's alleged oral statement.

Mr. Chief Justice EAGEN and Mr. Justice POMEROY would affirm the judgment of sentence for the reasons set forth in the opinions in support of affirmance in *Commonwealth v. Cain,* 471 Pa. 140, 369 A.2d 1234 (1977), parts II and V of the dissenting opinion in *Commonwealth v. Hilliard,* 471 Pa. 318, 370 A.2d 322 (1977), and the Opinion of the Court in *Commonwealth v. Myers,* 481 Pa. 217, ——, 392 A.2d 685, 687–88 (1978).

The judgment of sentence is therefore reversed and a new trial is ordered.

LARSEN, J., did not participate in the consideration or decision of this case.

## OPINION IN SUPPORT OF REVERSAL

ROBERTS, Justice.

■ Police took an inculpatory statement from appellant Nathaniel Lark while questioning him in violation of an agreement between appellant's counsel and police authorities. This questioning violated the agreement assuring appellant his right of counsel, U.S.Const. Amends. VI, XIV, Pa. Const. art. I, § 9, and thus the trial court improperly admitted the statement into evidence. The trial court also erred in denying appellant's request for a jury instruction on voluntary manslaughter. Appellant is entitled to a new trial on both grounds.

On September 4, 1970, appellant met with his attorney to make arrangements to turn himself in to the authorities. Appellant's attorney made arrangements with the district attorney's office. The district attorney's office agreed that appellant would not be questioned in any way. Appellant's attorney then accompanied appellant to the district attorney's office.

Two police officers, Detective Wade and Sergeant McGill, arrived at the district attorney's office at 12:30 p. m., September 4, to take custody of appellant. In their presence, appellant's counsel said there was to be no conversation with appellant. Wade testified at the suppression hearing that McGill told appellant in the district attorney's office that he was being charged with murder, robbery, and conspiracy, although McGill testified that he could not remember doing so.

Wade and McGill brought appellant to the Police Administration Building. Appellant's attorney did not accompany them. When they arrived at 12:50 p. m., appellant was taken to an interrogation room and handcuffed to a chair. Appellant was kept in the interrogation room until 2:55 p. m. In the interrogation room, McGill questioned appellant to obtain information necessary to fill out three forms: an arrest report, a hearing sheet, and a police information sheet. At 1:05 p. m., McGill told appellant the charges against him, and appellant responded with the incriminating statement used against him at trial. Detective Wade took down appellant's statement on an "interview sheet." Ten minutes later, after appellant's statement had been taken, appellant was asked if he would make a formal statement. Appellant refused, stating that he would not make any statement or sign any papers. McGill then continued to complete the police reports in the interrogation room.

In an effort to get a formal statement from appellant, McGill telephoned the district attorney's office and asked them to contact appellant's attorney. Appellant's attorney came to the Police Administration Building as soon as he was contacted.

## I

The Police violated the agreement with appellant's counsel when they questioned appellant to obtain the information necessary to complete their reports. The police clearly understood that no questioning should take place, and that they violated the agreement when they questioned appellant. At the suppression hearing Detective Wade admitted that they had violated the agreement:

"Q. [By defense attorney]. But you did violate it, didn't you, Mr. Wade? He [appellant's attorney] told you not to talk to him [appellant].

A. [by Detective Wade]. Yes, he told me not to talk to him.

Q. But you did talk to him?

A. Yes."

Detective Wade's attitude concerning his responsibility to comply with the agreement made between appellant's counsel and the authorities is also reflected by the following testimony:

"Q. You were aware of the fact that the lawyer had given instructions that no statement was to be given by the defendant. Were you instructed not to interrogate the defendant at that time?

A. That is correct.

.     .     .     .     .

Q. You were then advised, were you not, that he told the detective, 'You are also instructed not to talk to the defendant,' in his presence?

A. That was correct, but it didn't mean anything. He didn't represent me.

Q. He did not represent the man who was charged with the homicide?

A. Yes.

Q. I'll ask you the question. What did you mean, it didn't mean anything to you when the lawyer tells you, 'I represent the defendant, I don't want you to speak to my client.'

A. Not a thing. . . ."

Violation of the agreement, and questioning appellant in the absence of counsel, constitutes a denial of the right to counsel. See *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); *Commonwealth v. Bullard,* 465 Pa. 341, 350 A.2d 797 (1976);[1] cf. *Commonwealth v. Hilliard,* 471 Pa. 318, 370 A.2d 322 (1977) (Opinion Announcing the Judgment of the Court) (once counsel has undertaken to represent a defendant, the defendant cannot waive the right to counsel while in custody unless counsel is present). After agreeing not to talk with appellant or question him in any way, the police should not have asked any questions in the absence of counsel. Appellant's counsel was available. Indeed, counsel came to the Police Administration Building immediately when he was informed that a statement had been taken from appellant. If the police desired to question appellant, they should have, under the agreement, informed appellant's counsel and permitted counsel to decide whether to be present during the questioning.

It cannot be argued that, despite the express terms of the agreement, there is no reason to require that counsel be present before appellant is asked questions relating to background information. While such questions normally do not yield incriminatory statements, this background information may be incriminatory in certain instances. See e. g., *Commonwealth v. Rodgers,* 472 Pa. 435, 372 A.2d 771 (1977). Where, as here, the police have agreed not to ask these questions, the accused is entitled to have counsel present to advise him whether to answer these questions. The availability of counsel to advise the accused whether to answer

---

1. In *Bullard,* the defendant knew he was being sought by the police. He contacted a gang-control worker, who in turn contacted a Municipal Court judge who made arrangements for the defendant's surrender. When the defendant was turned over to the police, the judge instructed the police that no one was to talk with the defendant until the defendant's family obtained a lawyer. Nevertheless, the police interrogated the defendant in violation of these instructions. We held that this uncounseled interrogation violated the defendant's right to counsel.

questions may also serve to prevent background questioning from expanding into areas relating to the crime charged.

Moreover, the presence of counsel may also help to protect the rights of the accused by enabling him to reconstruct what actually happened while the police were questioning him. Cf. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (presence of counsel at line-up is necessary to insure that defendant can accurately reconstruct what took place); *Commonwealth v. Whiting,* 439 Pa. 205, 266 A.2d 738, cert. denied, 400 U.S. 919, 91 S.Ct. 173, 27 L.Ed.2d 159 (1970) (same). In this case appellant testified that questioning did go beyond background information, and extended into questioning about the crime itself. Appellant also testified that a statement taken from his brother, which implicated him in the crime, was read to him. The police contradicted this testimony, however, and the suppression court resolved this issue against appellant. Thus, for purposes of this appeal, we may not rely on appellant's contradicted testimony. See *Commonwealth v. Kichline,* 468 Pa. 265, 361 A.2d 282 (1976). Nonetheless, appellant's claim highlights the reasons counsel may want to be present during any questioning. Counsel might well conclude that the rights of his client are inadequately protected when they depend on the outcome of "the almost inevitable 'swearing contest' over what happened behind the closed doors." Y. Kamisar, W. La Fave & J. Israel, Modern Criminal Procedure 513 (4th ed. 1974).

Agreements not to question persons accused of crime outside the presence of counsel promote the prompt and fair administration of criminal justice. An agreement assures one who is sought for questioning that he will continue to have effective counsel after he surrenders. Were we to entertain and accept the Commonwealth's argument that appellant's statement was volunteered, we would make meaningless counsel's effort to assure that appellant would not subsequently incriminate himself without the presence of counsel. See *Brewer v. Williams, supra.* Police too easily could render the agreement a nullity through their testimony concerning the statement.

The statement by the police which elicited appellant's incriminating statement cannot be separated from the impermissible questioning of appellant. It was made during the course of the questioning of appellant and, indeed, the police continued to question appellant after they finished taking down appellant's statement. The statement taken from appellant was in violation of appellant's agreement assuring the presence of counsel and therefore should have been suppressed.[2]

## II

■ Appellant's conviction should also be reversed because the trial court refused to instruct the jury on voluntary manslaughter. Failure to grant appellant's requested instruction denied him due process. *United States ex rel. Matthews v. Johnson,* 503 F.2d 339 (3d Cir. 1974), cert. denied, 420 U.S. 952, 95 S.Ct. 1336, 43 L.Ed.2d 430 (1975); *Commonwealth v. Cain,* 471 Pa. 140, 369 A.2d 1234 (1977) (Opinion in Support of Reversal) (Opinion of Roberts, J., joined by O'Brien and Manderino, JJ.). This right should be applied to all defendants whose murder convictions were on direct appeal at the time *Matthews* was decided. *Commonwealth v. Cain, supra.*

O'BRIEN, J., joins Part II of this opinion.

MANDERINO, J., joins Parts I and II of this opinion.

## OPINION IN SUPPORT OF REVERSAL

NIX, Justice.

■ On the day following the killing appellant was surrendered by an attorney who had been retained for him by

---

**2.** The suppression court found that appellant already knew the charges against him when he was taken to the Police Administration Building. This supports the conclusion that appellant's statement did not result solely from being told the charges against him. It is unlikely that being told of the charges, by itself, would cause appellant to make an incriminating statement, when he already had been informed of the charges. Rather, the incriminating statement was produced by telling appellant of the charges against him in the course of the impermissible questioning.

his mother. Prior to placing the appellant in police custody defense counsel had reached an agreement with the Chief of the Homicide Division of the prosecutor's office that Lark was not to be interrogated. Counsel also advised his client of his constitutional rights. At that point it is clear that appellant concurred in the decision that he was to remain silent. When the detective, in whose custody appellant had been placed, began to read the warnings, counsel interrupted and stated, "He doesn't need to know that. I have talked to him. He is not going to make any statements and I have instructed him not to talk to you." The foregoing facts are substantially agreed to by both the prosecution and defense.

While appellant was in police custody and out of the presence of his counsel, he is alleged to have made the following statement:

Jimmy [appellant's younger brother] wasn't even there. I didn't kill the man the way they say I did. Me and Jimmy were walking down the street, and when Jimmy turned the corner, I seen the man come out of the house. He started to get in his car. I walked up to him with the gun and said, "Give me the money." He ran around the car and up on the steps and fell against the storm door. I ran after him and grabbed him by the shirt. I don't know if he tried to punch my hand or grab the gun, but it went off. I had the gun right up against his chest. He fell on the steps and I went into his left pants pocket and took the money. There was $70. I gave Jimmy $35 because he said he was going to Coney Island.

The prosecution's version as to the circumstances surrounding the making of this admission was that the police officials, upon counsel's departure, began preparing the necessary forms required for making a formal arrest. This consisted of an arrest report, a hearing sheet for the issuing authority, and a "229 report" (a police informational sheet, wherein the arrestee's name, age, background and occupation are noted). The prosecution's evidence would indicate that the officers did not interrogate appellant concerning the facts of the incident and that the statement was not given in response to any questions. The statement was

allegedly made immediately after appellant was formally advised that he was being charged with murder, robbery, larceny, receiving stolen goods, and conspiracy. When appellant was asked whether he would give a formal statement or sign the record of his oral statement he declined.

The appellant testified in substance that he gave *no statement at all* to the detectives. He admitted being questioned concerning his background but claimed that other than answering these questions he did not volunteer any information. The suppression court accepted the prosecution's version that the statement was made and that it was both spontaneous and voluntary.

We have frequently stated that an appellate court will accept a hearing court's findings of facts where there is support in the record for those findings. *Commonwealth v. Boone,* 467 Pa. 168, 354 A.2d 898 (1976); *Commonwealth v. Stafford,* 451 Pa. 95, 101, 301 A.2d 600, 604 (1974). The testimony given by the police officers provided a basis for the suppression court's acceptance of the prosecution's version, thus this would ordinarily end review of this complaint. However, it is this very point that raises a most important question that I believe is deserving of further consideration. The decision as to which version of the facts was to be accepted pitted the credibility of the appellant against the officers who gave a contradictory account of what occurred. In such a situation the accused, who was in the hostile surroundings of a police station, is at a distinct disadvantage. All of the potential witnesses are likely to be his inquisitors. Candor requires us to acknowledge that the testimony of a defendant, because of his obvious interest in the proceedings, is often viewed with jaundice eye and the absence of corroboration by a disinterested witness frequently proves fatal to the defendant's cause.

The rights guaranteed by the fifth and sixth amendments rest at the very foundation of our criminal justice system. To assure that these protections are meaningful, our cases have insisted that waivers of these rights must be affirmatively established. *Commonwealth v. Tyler,* 468 Pa. 193, 360 A.2d 617 (1976); *Commonwealth v. Ritchey,* 431 Pa. 269, 245

A.2d 446 (1968). See also *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). To allow waivers to be found by the resolution of credibility disputes against the accused, because he has been denied a witness who could have lent support to his version, seriously undermines the basic policy requiring that waivers should be clearly established and dangerously dilutes the protections intended to be afforded these constitutional rights.

A significant benefit to the accused provided by counsel's presence at a pre-trial critical event is that the defense is provided with a credible witness who is available to describe what transpired if and when controversy arises.[1] Equally significant, the very presence of counsel tends to temper the hostility of the custodial setting and discourages overzealous police conduct. These concerns have motivated this writer and two members of this Court to suggest the adoption of a per se rule that once counsel has undertaken to represent a defendant, the defendant cannot waive his right to counsel in custody unless counsel is present. *Commonwealth v. Hilliard,* 471 Pa. 318, 370 A.2d 322 (1977) (Opinion announcing the judgment of the Court, Part I by ROBERTS, J., joined by NIX and MANDERINO, JJ.); *Commonwealth v. Hawkins,* 448 Pa. 206, 292 A.2d 302 (1972) (Dissenting opinion by NIX, J., joined by ROBERTS and MANDERINO, JJ.).

Our sister state of New York has accepted the wisdom of this approach and has adopted such a rule for their jurisdiction:

> The rule that once a lawyer has entered the proceedings in connection with the charges under investigation, a person in custody may validly waive the assistance of counsel only in the presence of a lawyer breathes life into the requirement that a constitutional right must be competent, intelligent and voluntary. Indeed, it may be said that a right too easily waived is no right at all. (citations omitted).

1. It is interesting to note that in the present matter there is no controversy as to what transpired while counsel was present. The disagreement centers upon what occurred after counsel had left.

*People v. Hobson,* 39 N.Y.2d 479, 484, 384 N.Y.S.2d 419, 422, 348 N.E.2d 894, 898 (1976), following *People v. Arthur,* 22 N.Y.2d 325, 329, 292 N.Y.S.2d 663, 666, 239 N.E.2d 537, 539 (1968). *Accord, People v. Coleman,* 42 N.Y.2d 500, 399 N.Y.S.2d 185, 369 N.E.2d 742 (1977).

I am well aware that the waiver decision must ultimately be made by the defendant and that an agreement between counsel for the prosecution and the defense is not binding on the accused. Nor do I suggest that a defendant should be discouraged from giving a knowing and voluntary statement, if that is his considered judgment. My concern is that the defendant should not be deprived of a witness when a dispute subsequently arises as to whether the election was knowingly and freely made. In my judgment any concern that the requirement of the presence of counsel at the time of the waiver will inhibit statements by those in custody is overshadowed by the danger that police overreachings will go unchecked in counsel's absence. A statement admitting guilt can render the subsequent trial a mere formality. Thus the very real dangers present at this critical stage cannot be ignored particularly where the remedy places no significant burden upon the administration of the system.[2]

MANDERINO, J., joins this opinion.

---

**2.** Here counsel was immediately available when contacted after the alleged admission.