406 A.2d 1011

COMMONWEALTH of Pennsylvania

v.

Harry James BRANTNER, Appellant.

Supreme Court of Pennsylvania.

Argued May 22, 1979.

Decided Oct. 1, 1979.

Robert E. Campbell, Public Defender, for appellant.

Gary E. Hartman, Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION

NIX, Justice.

This is an appeal from judgments of sentence of life imprisonment entered upon each of two jury verdicts finding appellant guilty of the first degree murder of Robert Witta and his female companion, Julia Egnatosky.[1] Appellant testified at trial that early in the evening of November 5, 1976, he went to Witta's home to go deer hunting with Witta. Appellant entered the living room of the house and propped his rifle up against the inside door frame. At this time, Witta was in the living room seated on a love seat, and Ms. Egnatosky was in the kitchen. Appellant testified that Witta asked him if he had brought the money that appellant owed him, and when appellant replied that he was unemployed, Witta ordered Ms. Egnatosky to get a gun, and he himself pulled a carbine out from under his seat, operated the bolt, and aimed it at appellant. At or about the same time, appellant testified, Ms. Egnatosky entered the living room armed with a sawed-off shotgun. Appellant then started firing his rifle at Witta and Egnatosky. Appellant also testified that he then ransacked the house to give the appearances of a burglary or robbery, because he did not think anyone would believe his self-defense story. On cross-

1. Jurisdiction over this appeal is vested in this Court by section 722(1) of the Judicial Code, 42 Pa.C.S.A. § 722(1) (1979 Pamphlet).

examination, appellant had some difficulty explaining how he turned and retrieved his rifle, which was by the door, and then fired at the victims, who were then supposedly both armed. Expert medical testimony established that Egnatosky died as a result of two bullet wounds to the head, one of which was in the back of her head. Similarly, it was established that Witta was wounded in four places, once in the chest and four times ·in the head; two of the latter wounds were in the back of the victim's head. Although the medical expert could not specify the order in which the wounds were sustained, the expert stated that death was caused by chest and brain hemorrhage.

■ In a shotgun approach, appellant urges that the Commonwealth evidence was insufficient as a matter of law to establish the presence of a specific intent to kill, which was required for a finding of murder of the first degree.[2] He argues that the Commonwealth did not show any motive for the crime. It is, however, axiomatic that the Commonwealth is not required to prove motive to establish guilt even where the crime charged is murder of the first degree. *Commonwealth v. Fugmann*, 330 Pa. 4, 39 A.2d 838 (1944); *Commonwealth v. Bussieri*, 153 Pa. 535, 26 A. 228 (1893). *See also, Commonwealth v. Nasuti*, 385 Pa. 436, 123 A.2d 435 (1956) (arson); *Commonwealth v. Truitt*, 369 Pa. 72, 85 A.2d 425 (1951) (assault and battery); *Commonwealth v. De Petro*, 350 Pa. 567, 39 A.2d 838 (1944) (arson).

**2.** Appellant contends that the *weight* of the Commonwealth's evidence is insufficient to support the conviction. In so arguing, he is in fact questioning the jury's determination of the credibility of the witnesses. We resolved a similar challenge in *Commonwealth v. Farquharson*, 467 Pa. 50, 59–60, 354 A.2d 545, 550 (1976), where we said:

"Traditionally under our system of jurisprudence, issues of credibility are left to the trier of fact for resolution. . . . While there may be some legitimacy for a trial court, who has also observed the witnesses as they testified, to consider the *weight* of the evidence and to that extent review the jury's determination of credibility, there is surely no justification for an appellate court, relying solely upon a cold record, to exercise such a function. (Emphasis added, citation omitted).

*See also Commonwealth v. Cristina*, 481 Pa. 44, 50, 391 A.2d 1307, 1310 (1978).

Though the evidence against her was circumstantial, if it satisfied the jury of her guilt she is not to be saved from the consequences of her crime because a motive for its commission, however important a matter the same might be, had not been disclosed. There can be no escape from punishment for crime when all the elements of it are proved, whether the evidence be positive or circumstantial, simply because the motive lies hidden in the heart of the only one who knows it.

*Commonwealth v. Danz*, 211 Pa. 507, 517, 60 A. 1070, 1073 (1905).

Another theory, urged by appellant to support his contention, is that the prosecution failed to establish a wilful, premeditated and deliberate killing, was that the Commonwealth failed to refute the defense evidence indicating his incapacity to form a specific intent to kill. Appellant is correct in noting that this jurisdiction recognizes diminished mental capacity as a defense to a charge requiring a specific intent. *Commonwealth v. Walzack*, 468 Pa. 210, 360 A.2d 914 (1976). (Eagen, C. J. and O'Brien, J. dissented). However, it cannot be said that the Commonwealth failed to produce evidence to rebut any inference that appellant was laboring under such a disability.

Appellant called a psychiatrist, who testified that on the day of the shooting, appellant had a schizoid personality and was paranoid; he further stated that on that day, appellant believed he was in danger, acted in panic, and was not able to form a conscious intent to kill. The prosecution offered appellant's own statement reflecting a consciousness of the consequences of his acts, and also produced lay testimony going to establish appellant's sanity. Viewing all of the evidence in a light most favorable to the Commonwealth, *Commonwealth v. Williams*, 476 Pa. 557, 560, 383 A.2d 503 (1978), we find the evidence more than sufficient to permit the jury to reject any suggestion of diminished capacity and to find that appellant intended to cause the death of his victims. *See Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30 (1976).

Appellant further charges that the trial court erred in refusing to grant a mistrial and in limiting defense counsel's voir dire of prospective jurors. During voir dire three prospective jurors indicated that the case had been discussed by other members of the panel in the jury room. Appellant moved for a mistrial on each of these occasions. His argument on this issue is two pronged.

First, appellant argues for the adoption of a *per se* rule that would mandate a mistrial whenever it has become apparent that members of the jury panel from which the petit jury is selected have previously discussed some aspect of the case. In support of this proposition, appellant cites *Commonwealth v. Santiago*, 456 Pa. 265, 318 A.2d 737 (1974). The *Santiago* decision is clearly inapposite. First, in *Santiago* it was clear that the extraneous communication contained highly prejudicial and inflammatory information which would not have been otherwise before the jury. Here there is nothing to suggest that any inflammatory or improper information was conveyed to the jurors during these discussions.[3] Second, in *Santiago* the information was conveyed to the actual jurors hearing the case during the middle of trial, whereas, here the discussions occurred prior to the selection of the jury, and counsel, during voir dire, had the opportunity to question prospective jurors and determine what, if any, prejudice had been occasioned by the discussions. Additionally, each of the prospective jurors who disclosed on voir dire that they had participated or heard the discussion of the case in the jury room was removed; one for cause by the defense, one by a defense peremptory challenge, and one by a Commonwealth peremptory challenge.[4] It is to be remembered

3. The discussion was apparently inspired by local newspaper accounts of the crime. Appellant's counsel has failed to place these articles in the record. We, therefore, have no basis for determining whether they contained any inflammatory or prejudicial information. Moreover, appellant does not base his complaint upon the content of the articles.

4. It should be noted that the defense used only 16 of the 20 peremptory challenges given to it by law in capital cases. *See* Act of March 6, 1901, P.L. 16 § 1, as amended, 19 P.S. § 811 (Supp.1979–80).

that the constitutional "mandate for a fair and impartial jury does not require that the prospective jurors be free of all knowledge of the facts and circumstances surrounding the incident which forms the basis of the trial. . . . Thus, the critical question . . . is whether or not they are capable of casting aside any impressions or opinions they may have formed and render a verdict based solely upon the evidence presented to them during the course of the trial." *Commonwealth v. Hoss*, 469 Pa. 195, 200, 201, 364 A.2d 1335, 1338 (1976).[5]

■ The record in the present case indicates that each prospective juror was asked whether he or she had any opinion as to the guilt or innocence of the accused notwithstanding what was discussed in the jury room. Those persons selected for the petit jury stated that they had not been influenced by the discussions. Accordingly, we believe that this situation does not warrant the creation of a *per se* rule. The voir dire process, including the right to peremptory challenges and to challenges for cause, affords a defendant sufficient protection from prejudice without the imposition of the *per se* rule urged by appellant.

■ The second prong of appellant's argument is that his questioning of the prospective jurors during voir dire was improperly limited by the trial judge. When appellant sought to question a prospective juror, who had admitted to hearing discussion of the case in the jury room, concerning the substance of the discussion, the prosecution objected and that objection was sustained by the court. In so ruling, the court made it clear that counsel could not question the present witness as to what *other* jurors had said. The court did not, however, prevent defense counsel from asking each prospective juror whether *he or she* participated in the discussions or the substance of what the *individual* prospective juror discussed. The failure of defense counsel to

5. Although the *Hoss* case involved pretrial publicity and a change of venue, it presented the same core concern—the necessity for an unbiased and impartial jury—and is sufficiently analogous to the present case to be instructive here.

question other prospective jurors along these lines cannot be imputed to the trial judge as error. A similar situation was presented to this Court in *Commonwealth v. Segers*, 460 Pa. 149, 156, 331 A.2d 462, 466 (1975) where we stated:

Recognizing the right of a party to inquire into bias or any other subject which bears on the impartiality of a prospective juror, the scope to be allowed the examination on voir dire nevertheless rests in the sound discretion of the trial judge. *Commonwealth v. Johnson*, 452 Pa. 130, 305 A.2d 5 (1973); *Commonwealth v. Biebighouser*, 450 Pa. 336, 300 A.2d 70 (1973); *Commonwealth v. Lopinson*, 427 Pa. 284, 234 A.2d 552 (1967); *Commonwealth v. McGrew*, 375 Pa. 518, 100 A.2d 467 (1953). Here it was within the trial court's discretion whether to accept or reject counsel's theory that racial prejudice could be established simply by a venireman's pattern of change of his residence. We are satisfied that the trial court was within its discretion in refusing to permit further questioning based upon that theory. As stated above, appellant was permitted to question veniremen *directly* on the subject of racial prejudice. Thus, we cannot say that appellant was denied his right to a fair and impartial jury.

We, therefore, must also reject appellant's argument on this point.

 Next, appellant argues that the trial court erred in denying a motion to suppress an inculpatory statement made by appellant during the booking process following arrest. In reviewing a suppression court's findings, we consider the evidence of the Commonwealth and so much of the defense evidence which, fairly read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Silo*, 480 Pa. 15, 18, 389 A.2d 62 (1978). *But see Commonwealth v. Lark*, 482 Pa. 292, 300, 393 A.2d 1112, 1116 (1978) (Nix, J., opinion in support of reversal). Viewing the evidence in light of this standard, the facts are as follows: When appellant was arrested by the State Police, he was given his

*Miranda*[6] warnings, and he requested a lawyer. The State Police then turned appellant over to the sheriff, who, early in the booking process, said to appellant, "Hi, Harry. Apparently we have a little problem, and I need to take your photograph." Appellant replied, "Yeah, I shot those two people." The sheriff then readvised appellant of his constitutional rights. It is the admissibility of this statement which appellant challenges. There is little doubt that inculpatory statements obtained by police interrogation which are not preceded by proper constitutional warnings are subject to suppression. However, in the instant case, the sheriff's greeting cannot be characterized as "interrogation," as we have defined that word. "Interrogation" is police conduct "calculated to, expected to, or likely to evoke admission." *Commonwealth v. Simala*, 434 Pa. 219, 226, 252 A.2d 575, 578 (1969). The statement by the sheriff was not of an inquisitive nature; it simply alluded to a "problem" and informed appellant of the need for a photograph. No response was called for, and appellant's reply was gratuitous. This situation presents one of the clearest examples of a volunteered statement, the admissibility of which is unaffected by the absence of prior constitutional warning. *See Miranda v. Arizona*, 384 U.S. 436, 478, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Commonwealth v. Sero*, 478 Pa. 440, 453, 387 A.2d 63 (1978). Therefore, it was not error to deny the motion to suppress the statement.[7]

Judgments of sentence affirmed.[8]

**6.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**7.** Because appellant took the stand and admitted to the shooting, there was never any factual dispute as to whether he committed the lethal acts. Thus, even if we indulge appellant in his argument that the pre-trial statement should have been suppressed, its admission into evidence was, at most, harmless error. *See generally Commonwealth v. Heatherington*, 477 Pa. 562, 570, 385 A.2d 338 (1978).

**8.** Appellant also contends that: he was deprived of his right to trial by a fair and impartial jury; a mistrial should have been declared because the jury requested and received a fifteen foot piece of string from a tipstaff without knowledge of court or counsel; the trial court erred in refusing to give four points for charge requested by appel-

528

EAGEN, C. J., concurred in the result.

MANDERINO, J., filed a dissenting opinion.

MANDERINO, Justice, dissenting.

I dissent. The trial court's refusal to declare a mistrial when the jury received a fifteen foot piece of string from the *tipstaff* during its deliberations *without the knowledge of the court or counsel* was reversible error. The majority in affirming the trial court's decision ignores the language of Pa.R.Crim.P. 1114 and prior cases of this Court.

The majority employs a hindsight test and concludes that the string was "in the jury's presence for only five minutes and that no demonstration was ever conducted; [the foreman] also stated that the string was not a factor in the jury's deliberations." Rather, the guide to be used in determining whether the admission of the fifteen foot piece of string during the jury's deliberations was reversible error is Pa.R.Crim.P. 1114. Rule 1114 provides:

> "Upon retiring for deliberations, the jury shall not be permitted to have a transcript of any trial testimony, nor a copy of any written confession by the defendant, nor a copy of the information or indictment. *Otherwise, upon retiring, the jury may take with it such exhibits as the trial judge deems proper."* (Emphasis added.)

In the case before us, the provisions of Rule 1114 were ignored. First of all, the *trial judge* did not decide that the jury could have taken the string with it "upon retiring." Instead, the decision was made by an employee of the court, a tipstaff, after the jury had retired. The Rule does not delegate the judge's decision to anyone else, and the timing of the decision should occur before the jury retires. Second, the piece of string was not an "exhibit" properly introduced into evidence during the trial. Neither defense counsel nor

lant; the totality of the alleged trial errors deprived appellant of a fair trial. We have carefully considered these contentions and find them to be without merit.

the prosecution had the opportunity to examine the accuracy, authenticity, or relevancy of the string. Third, neither defense nor the prosecution had the opportunity to challenge the admissibility of the piece of string into evidence. These factors outlined above are protections afforded to the defendant when the provisions of Rule 1114 are followed.

Additionally, this Court has said that the better procedure is "not to allow exhibits into the jury room which would require expert interpretation." *Commonwealth v. Pitts*, 450 Pa. 359, 363, n.1, 301 A.2d 646, 650 n.1 (1973). Appellant argued at trial that the direction and angle of the shots supported the defendant's version of the facts, and if the string was to be used to establish the direction and angle of the shots, appellant's counsel could have presented an expert opinion on this issue. Even if we accept the foreman's statement that no demonstration was conducted, how can it be said that some juror was not affected by seeing the string. After all, the jury asked for a *fifteen foot piece of string*. Why?

This Court has said that the propriety of the trial court's decision to allow the jury to have exhibits with them during deliberations should be examined in relationship to the issues raised during trial. *Commonwealth v. Riggins*, 478 Pa. 222, 233, 386 A.2d 520, 525 (1978). When applying this standard, it is obvious that the piece of string could have affected a juror's resolution of an important issue in the case. Accordingly, I must dissent from the trial court's refusal to declare a mistrial. Judgment of sentence should be reversed and appellant is entitled to a new trial.