J-A08014-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONALD TILLMAN | : | |
| | : | |
| Appellant | : | No. 1092 EDA 2024 |

Appeal from the Judgment of Sentence Entered March 14, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005482-2022

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONALD TILLMAN | : | |
| | : | |
| Appellant | : | No. 1093 EDA 2024 |

Appeal from the Judgment of Sentence Entered March 14, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005478-2022

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONALD TILLMAN | : | |
| | : | |
| Appellant | : | No. 1094 EDA 2024 |

Appeal from the Judgment of Sentence Entered March 14, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005479-2022

BEFORE:   LAZARUS, P.J., PANELLA, P.J.E., and STEVENS, P.J.E.*

MEMORANDUM BY LAZARUS, P.J.:                    **FILED APRIL 24, 2026**

Donald Tillman appeals from the judgments of sentence, entered in the Court of Common Pleas of Philadelphia County, after a jury convicted him of three counts of first-degree murder and related charges.  After our review, we affirm.

The trial court set forth the facts of this matter as follows:

On January 20, 2021, [Tillman] came to the home of his girlfriend, Tyronda Herrington.  Also present were her 14[-]year-old daughter, [S.H.], and her son with [Tillman], [M.T.]  At some point an argument broke out between [Tillman] and [] Herrington.  [S.H.] took her brother upstairs to their bedroom.  While in [the] bedroom with the door closed, [S.H.] heard a gunshot.  Shortly after, [Tillman] burst through the bedroom door pointing a gun at her.  [S.H.] heard clicking from the area of [Tillman's] hand holding the gun.  She then saw him manipulating the gun as if trying to get it unjammed.

At the same time, [S.H.] heard her mother down the hall in her own bedroom yelling to [Tillman] not to hurt the children.  [Tillman] then turned and left the room.  Through the open door, [S.H.] could see [Tillman] walking down the hallway toward her mother's bedroom.  She then heard another gunshot, followed by [Tillman] running back past her bedroom, and down the stairs.  [S.H.] went to her mother's room[,] where she found [] Herrington lying naked in the bedroom doorway with gunshot wounds to her face, stomach, and legs.  [S.H.] then called 911.  [] Herrington died on the scene.  [She had been shot six times, with a "fatal and immediately incapacitating"[1] shot to the head.]  Crime scene investigators collected fired cartridge casings and bullet fragments from the scene.

_____

* Former Justice specially assigned to the Superior Court.

[1] N.T. Trial, 3/12/24, at 135 (assistant medical examiner testifying to cause and manner of death).

On January 22, 2021, police went to the apartment of Mark Ruff. A maintenance man doing a wellness check on [] Ruff[,] who had not been seen for a few days[,] found [] Ruff and his girlfriend[,] Nicole Newell[,] dead in the apartment. Both victims had gunshot wounds to the back of the head. In processing the scene, police collected a fired cartridge casing next to [] Ruff and another next to [] Newell. No guns were present. The police also found a cell phone on the couch[ and] drugs on the coffee table, along with a mug and a cup. The police took DNA swabs from the mug and cup. A subsequent survey of the apartment by [] Ruff's brother identified that [] Ruff's phone, wallet, car keys[,] and a distinctive jacket were missing. [] Ruff and [] Newell were determined to have been shot some days earlier. The recovered phone belonged to [Tillman].

That same day, two miles away, a maintenance man at another apartment building found a small trashcan containing two sets of car keys. He tried clicking the fobs to see if any of the cars in the apartment parking lot responded. When they did not, the maintenance man consulted Joseph Przepiorka [], a retired police sergeant [who was a] tenant of the building. [] Przepiorka informed an active-duty officer acquaintance about the keys and circumstances, adding that an AutoZone rewards membership card was attached to the keys. The officer took the key chain to an AutoZone, where the tag was scanned and came back as belonging to [] Ruff. Przepiorka then called police, who connected the keys to the killing of Ruff. Homicide Detectives recovered video showing a black male wearing in a black hat, mask, and a jacket matching that taken from [] Ruff's apartment, walking through the parking lot. On January 26, 2021, homicide detectives received information that [Tillman] was at Jefferson Torresdale [H]ospital, where he was arrested. Among the clothes [Tillman] came into the hospital with were a jacket matching that missing from [] Ruff's apartment, which was also seen, on the parking lot video, as well as a second G[ap] jacket.

Cell phone records placed [Tillman] in the area of [] Herrington's home around the time of her death, and in the vicinity of [] Ruff's apartment around the estimated time of the death of [] Ruff and [] Newell. The jacket [Tillman] wore into the hospital, which matched the description of [] Ruff's missing jacket, was found to contain DNA from both [Tillman] and [] Ruff. Comparison of fired cartridge casings recovered at the two crime scenes established that they were fired from the same gun.

Trial Court Opinion, 1/17/25, at 3-4.

On March 12, 2024, Tillman was tried in absentia before a jury. On March 14, 2024, the jury convicted Tillman of three counts of first-degree murder[2] in connection with the deaths of Herrington, Newell, and Ruff. Tillman was also convicted of two counts of possession of instruments of crime ("PIC")[3] and one count each of attempted murder,[4] endangering the welfare of a child,[5] and two violations of the Uniform Firearms Act.[6] On March 14, 2024, the trial court sentenced Tillman to an aggregate term of life imprisonment without the possibility of parole. Tillman's post-sentence motion challenging the weight of the evidence was denied. On April 12, 2024, while his post-sentence motion was still pending, Tillman filed a single pro se notice of appeal, listing all three docket numbers.[7] Pursuant to an order of

_____

[2] 18 Pa.C.S.A. § 2502(a).

[3] *Id.* at § 907(a).

[4] *Id.* at 901(a)

[5] *Id.* at § 4304(a)(1).

[6] *Id.* at § 6106(a)(1) (firearms not to be carried without a license), § 6108 (carrying firearms on public streets in Philadelphia).

[7] It is well-settled in this Commonwealth that if a defendant files a timely post-sentence motion, the notice of appeal shall be filed within 30 days of the entry of the order deciding the motion. *See* Pa.R.Crim.P. 720(A)(2)(a). A notice of appeal filed while post-sentence motions are pending is premature. *See* ***Commonwealth v. Claffey***, 80 A.3d 780, 783 (Pa. Super. 2013). A premature notice of appeal shall be treated as filed on the date the appealable order is entered. *See* Pa.R.A.P. 905(a)(5). Here, we treat Tillman's notice of
*(Footnote Continued Next Page)*

- 4 -

this Court, Tillman, through counsel, filed three amended notices of appeal, one for each trial court docket number, in compliance with *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018), which requires appellants to file separate notices of appeal when a single order resolves issues arising at more than one trial court docket. Both Tillman and the trial court have complied with Pa.R.A.P. 1925.

Tillman raises the following issues for our review:

[1.] Did the [trial c]ourt err in precluding [Tillman] from the courtroom during trial and requiring him to attend remotely[?]

[2.] The evidence was insufficient to support the convictions.

[3.] The verdict was against the weight of the evidence.

Brief of Appellant, at 6.

Tillman first challenges the trial court's decision to conduct the trial in absentia. Due to Tillman's disruptive behavior in the courtroom, the trial court made the decision to proceed to trial in absentia, with Tillman observing via

_____

appeal as filed on April 23, 2024, the date the trial court denied his post-sentence motion.

In addition, we note that, at the time he filed his premature pro se notice of appeal, Tillman was still represented by current counsel. Generally, pro se filings by represented parties are treated as legal nullities. *See Commonwealth v. Nischan*, 928 A.2d 349, 355 (Pa. Super. 2007). However, "[b]ecause a notice of appeal protects a constitutional right, it is distinguishable from other filings that require counsel to provide legal knowledge and strategy in creating a motion, petition, or brief." *Commonwealth v. Williams*, 151 A.3d 621, 624 (Pa. Super. 2016). Accordingly, Tillman's pro se notice of appeal is not barred by the rule prohibiting hybrid representation.

- 5 -

closed-circuit television from a cell room. The trial court noted as follows on the record prior to jury selection:

> The defendant's eruptions continued nonstop, and he said many things that were unintelligible, including that it was going to be this way all week, that he was going to come down naked every day, and a whole bunch of other things that I couldn't make out.
>
> So[,] in order to reduce the continued burden on the sheriff, we've permitted them to transport—return the defendant to State Road so that we can proceed.
>
> And if courtroom operations is able to set up closed-circuit contact in a different floor, then we will do that for the rest of the trial. If they cannot, then we'll simply do the trial in absentia.
>
> In the alternate, if the defendant proves to be an undue threat to safety, in the sheriff's own judgment, we'll also do the whole thing in absentia and not even have him brought down from State Road.

N.T. Trial, 3/11/24, at 24-25.

The following day, as trial was to commence, Tillman was taken to a cell with closed-circuit television access, where he continued to act in a disruptive manner, including threatening to "show his rear" on the television monitor. *Id.*, 3/12/24, at 8-9. Trial counsel did not object to trial being held in absentia and agreed to the following instruction, which the court gave the jury upon its entry into the courtroom:

> [THE COURT: A]s you can see, the defendant is not here and will not be joining us in person for this trial. He does have access electronically. He can see and hear what we're doing, but he is not here, and we cannot see or hear him.
>
> You are not to draw any negative inferences from the fact that he is not here with us in person. You are not to draw any favorable inferences from the fact that he is not here with us in person.

And you should not speculate as to the reasons for his absence because they do not relate to the evidence that you will be hearing during the course of this trial.

Does everyone understand this instruction?

THE JURY: Yes.

THE COURT: Is there anyone here who cannot follow this instruction?

All right. Good.

*Id.* at 12-13.

Tillman argues that "he was not given an appropriate timely opportunity to control and cure his negative behavior," particularly where, "in essence[,] he was involved in a [c]apital [m]urder matter." Brief of Appellant, at 10. Thus, Tillman argues, this Court should

examine his treatment and removal against the applicable state law at the time. Did he have sufficient warnings that his negative behavior would result in permanent banishment. Whether Tillman created a waiver by his continual actions during the proceedings. [] Tillman submits that the court did not fulfill their judicial obligation to ensure that [Tillman] would have a presence during this triple homicide trial and thus a new trial should be ordered to cure his violation of his God given constitutional rights.

*Id.* (unnecessary capitalization omitted).

Tillman's argument on this claim, which amounts to slightly over one page, contains no citations to the record and cites only to the United States Supreme Court's holding in a case addressing the circumstances under which a criminal defendant may lose his right to be present in a courtroom. *Id.* at 10, citing *Illinois v. Allen*, 397 U.S. 337, 343 (1970) (defendant may lose right to be present at trial if, after warning he will be removed, he continues

disruptive behavior and conducts self in manner "so disorderly, disruptive, and disrespectful" that trial cannot carry on with him in courtroom), and **Commonwealth v. Tejada**, 188 A.3d 1288, 1293-94 (Pa. Super. 2018) (quoting **Allen**). Tillman does not attempt to engage in any legal analysis addressing the specific facts of his case and, instead, asks this Court simply to "examine his treatment and removal against the applicable state law at the time." Brief of Appellant, at 10. Tillman does not, however, point us to the applicable state law. It is well-established that "[w]hen issues are not properly raised and developed in briefs[ and] when the briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof." **Commonwealth v. Tchirkow**, 160 A.3d 798, 804 (Pa. Super. 2017) (citation omitted). Because Tillman's claim is woefully underdeveloped, we are constrained to find it waived.

Alternatively, as we noted above, our review of the transcript indicates that Tillman's counsel did not object when the court decided to hold the trial in absentia. Rather, counsel simply inquired of the court as to how it intended to instruct the jury on Tillman's absence from the courtroom and later agreed to the court's proposed instruction. **See** N.T. Trial, 3/11/24, at 25-26; **id.**, 3/12/24, at 9-13. The Pennsylvania Rules of Appellate Procedure and our case law provide the well-established requirements for preserving a claim for appellate review. It is axiomatic that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "The absence of a contemporaneous objection below constitutes a

waiver" of the claim on appeal. ***Commonwealth v. Powell***, 956 A.2d 406, 423 (Pa. 2008); ***Tindall v. Friedman***, 970 A.2d 1159, 1174 (Pa. Super. 2009) ("On appeal, we will not consider assignments of error that were not brought to the tribunal's attention at a time at which the error could have been corrected or the alleged prejudice could have been mitigated.") (citation omitted). Because Tillman did not preserve this issue with a timely objection in the trial court, it is waived for that reason also.

Tillman next argues that the evidence was insufficient to sustain his conviction for first-degree murder. Sufficiency of the evidence is a question of law; as such, our standard of review is de novo and our scope of review is plenary. ***Commonwealth v. Coniker***, 290 A.3d 725, 733 (Pa. Super. 2023). When reviewing a challenge to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as verdict winner, giving it the benefit of all reasonable inferences to be drawn from the evidence. ***Commonwealth v. Lake***, 281 A.3d 341, 345 (Pa. Super. 2022), citing ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000). Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused beyond a reasonable doubt. ***Commonwealth v. Lynch***, 72 A.3d 706, 708 (Pa. Super. 2013) (en banc). "Entirely circumstantial evidence is sufficient so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." ***Commonwealth v. Cline***, 177 A.3d 922, 925 (Pa. Super. 2017) (citation omitted). Any doubt as to the defendant's

guilt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *Lake*, 281 A.3d at 346.

Murder of the first degree is an intentional killing. *See* 18 Pa.C.S.A. § 2502(a). An "intentional killing" is a killing that is "willful, deliberate[,] and premeditated[.]" *Id.* at § 2502(d). To sustain a conviction for first-degree murder, the Commonwealth must prove beyond a reasonable doubt that: (1) a human being was killed; (2) the accused caused the death; and (3) the accused acted with malice and the specific intent to kill. *Commonwealth v Le*, 208 A.3d 960, 969 (Pa. 2019).

The Commonwealth may prove the specific intent to kill "solely through circumstantial evidence." *Commonwealth v. Blakeney*, 946 A.2d 645, 651 (Pa. 2008). A fact-finder may infer that the defendant had the specific intent to kill the victim based on the defendant's use of a deadly weapon upon a vital part of the victim's body. *Id.* The specific intent to kill can be formed in a "fraction of a second." *Commonwealth v. Rodriguez*, 340 A.3d 334, 348 (Pa. Super. 2025), citing *Commonwealth v. Clemons*, 200 A.3d 441, 463 (Pa. 2019). Finally, a defendant's subsequent conduct, including flight, is evidence of consciousness of guilt, which can establish that the defendant acted with a specific intent to kill. *See Commonwealth v. Moore*, 937 A.2d 1062, 1067 (Pa. 2007).

Here, with respect to the murder of Herrington, Tillman argues that the shooting "happen[ed] out of a heat of passion and should have been no higher

than [t]hird [d]egree at best." Brief of Appellant, at 11-12. He asserts that the shooting was not "premeditated or planned," but "involved a hardened indifference to the consequences of his actions as the result of an out-of-control family argument exacerbated by intense anger[.]" *Id.* at 12.

As to the murders of Ruff and Newell, Tillman alleges that the Commonwealth's evidence was "purely circumstantial" and that "no motive or even tangential relationship exist[ed] between the parties." *Id.* Tillman argues there was no eyewitness testimony that he was ever in Ruff's apartment and, while there was "circumstantial evidence suggesting [] Ruff and Tillman interacted," it does not "arise to the level of double homicide beyond a reasonable doubt." *Id.* Tillman is entitled to no relief.[8]

The trial court succinctly addressed Tillman's sufficiency claim as follows:

> Here, as set forth in the factual recitation above, there was sufficient evidence, both direct and circumstantial, that [Tillman] committed all three murders. In particular, we note that as to [] Herrington, [Tillman] shot her at least once, before going down the hall to attempt to kill her daughter. Then[,] when [] Herrington cried out begging [Tillman] not to hurt the children, he returned to her room and shot her again. In total, [Tillman] caused [six] gunshot wounds to [] Herrington.
>
> As to [] Ruff and [] Newell, the circumstantial evidence established that: [Tillman] was in the apartment; the ballistic evidence

_____

[8] As the Commonwealth notes in its brief, Tillman fails to cite any case law other than a boilerplate recital of the standard of review of a sufficiency claim and a case stating that a conviction must be based on more than mere suspicion or conjecture. *See* Brief of Appellant, at 12, citing *Commonwealth v. Roscioli*, 309 A.2d 396, 398 (Pa. 1973). As such, we could find Tillman's claim waived for failure to develop it. However, we decline to do so.

demonstrated that the same gun was used to kill [] Ruff and [] Newell as was used to kill [] Herrington; [Tillman's] phone was in [Ruff's] apartment; cell phone records tied [Tillman] to the vicinity of [] Ruff's apartment; [Tillman] was in possession of [] Ruff's jacket; [Ruff's jacket contained] DNA from both Ruff and [Tillman]; and a man matching [Tillman's] description[,] who wore Ruff's jacket[,] was recorded on video in the area where Ruff's keys were found abandoned.

Trial Court Opinion, at 12.

Based on the foregoing, we agree with the trial court that there was sufficient direct and circumstantial evidence to prove, beyond a reasonable doubt, that Tillman committed all three murders and did so with the specific intent to kill. In Herrington's case, Tillman shot Herrington at least once, went to S.H.'s room, and then returned to Herrington's room and delivered the fatal shot to her head, after which he fled the scene. Based on the totality of these circumstances, the jury could have found that Tillman possessed the specific intent to kill Herrington. *See Blakeney*, *supra*; *Rodriguez*, *supra*; *Moore*, *supra*.

With regard to the murders of Ruff and Newell, as set forth above, the Commonwealth presented significant circumstantial evidence connecting Tillman to the crime scene. Both Ruff and Newell were both killed by gunshot wounds to the head. Accordingly, the jury could have found, beyond a reasonable doubt, that Tillman shot Ruff and Newell with the specific intent to kill them. *Blakeney*, *supra*.

Finally, contrary to Tillman's claims, it is "axiomatic that the Commonwealth is not required to prove motive to establish guilt[,] even

where the crime charged is murder of the first degree." ***Commonwealth v. Brantner***, 486 Pa. 518, 522, 406 A.2d 1011, 1013 (1979) (collecting cases). Eyewitness testimony is also not required, as "[e]ntirely circumstantial evidence is sufficient so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." ***Cline***, 177 A.3d at 925. Therefore, Tillman is entitled to no relief on his sufficiency claim.

Lastly, Tillman asserts that the verdict was against the weight of the evidence. Tillman argues that, "[b]ecause the evidence presented was at best suppositional and best on surmise [sic], it is submitted that unsupported non[-]vetted [sic], unsupported by physical eyewitness observation, does not create enough heft to have a first-degree murder verdict stand." Brief of Appellant, at 13-14. Tillman claims that, "[a]t best[,] the evidence presented created a horrible incident but malice and forethought and most importantly motive doesn't [sic] exist." ***Id.*** at 14. He is entitled to no relief.

Our standard of review of the denial of a weight claim by a trial court is to examine "the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013), quoting ***Commonwealth v. Widmer***, 744 A.2d 745, 753 (Pa. Super. 2000). In a post-sentence motion, a weight claim "is addressed to the discretion of the trial court." ***Widmer***, 744 A.2d at 751. "In order for a defendant to prevail on a challenge to the weight of the evidence, 'the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'"

*Commonwealth v. Talbert*, 129 A.3d 536, 546 (Pa. Super. 2015), quoting

*Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa. Super. 2003).  A trial

court's denial of a motion based on a weight claim "is the least assailable of

its rulings."  *Commonwealth v. Diggs*, 949 A.2d 873, 880 (Pa. 2008).

"An appellate court's standard of review when presented with a weight

of the evidence claim is distinct from the standard of review applied by the

trial court."  *Clay*, 64 A.3d at 1055.  This Court must limit review to "whether

the trial court abused its discretion by reaching a manifestly unreasonable

judgment, misapplying the law, or basing its decision on partiality, prejudice,

bias, or ill-will."  *Id.* at 1056.

Here, the trial court concluded that

> [T]he jury carefully weighed the evidence and credited the
> testimony as to [Tilliman's] conduct in reaching its verdicts.
> Having observed the witnesses and the other evidence of guilt,
> the [c]ourt's conscience is not at all shocked by those verdicts. To
> the contrary, the three verdicts of guilty [as to] first[-]degree
> murder were consistent with the overwhelming weight of the
> credible evidence[.]

Trial Court Opinion, 1/17/25, at 13.

Upon review, we can discern no abuse of discretion in the trial court's

conclusion that the first-degree murder verdicts were consistent with the

overwhelming weight of the credible evidence.  *Clay*, *supra*.  As noted above,

neither proof of motive nor eyewitness testimony is required to establish guilt.

*See Brantner*, *supra*; *Cline*, *supra*.  Accordingly, Tillman's claim fails.

Judgments of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>4/24/2026</u>