J-S35038-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANTE WASHINGTON | : | |
| | : | |
| Appellant | : | No. 1035 MDA 2021 |

Appeal from the Judgment of Sentence Entered March 22, 2021
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0001075-2014

BEFORE: OLSON, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: **FILED DECEMBER 21, 2021**

Dante Washington (Washington) appeals from the March 22, 2021 judgment of sentence imposed by the Court of Common Pleas of Lycoming County (PCRA court) after his first petition pursuant to the Post-Conviction Relief Act[1] (PCRA) was granted in part and dismissed in part. He raises ineffective assistance of counsel (IAC) claims related to trial and appellate counsel and claims of error related to his resentencing. We affirm in part, reverse in part and remand to allow Washington to pursue a limited direct appeal *nunc pro tunc*.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541 *et seq*.

**I.**

We glean the following facts from the certified record. In 2016, Washington was convicted following a bifurcated jury and bench trial of attempted murder, aggravated assault causing serious bodily injury (SBI), aggravated assault with a deadly weapon, four counts of robbery, theft by unlawful taking, possession of a weapon, persons not to possess and carrying a firearm without a license.[2] The charges were based on an incident in which Washington robbed and shot a taxicab driver, Eugene Williams (Williams), causing serious injuries. At trial, Washington argued that he had been misidentified as the perpetrator. The trial court sentenced Washington to an aggregate term of 36 to 72 years' incarceration and this Court affirmed the judgement of sentence. *See Commonwealth v. Washington*, 455 & 480 MDA 2017, at *11 (Pa. Super. Nov. 2, 2018) (unpublished memorandum), *allocator denied*, 799 MAL 2018 (Pa. April 30, 2019).

Washington timely filed a *pro se* PCRA petition and the PCRA court appointed counsel. Counsel filed an amended petition raising the following claims relevant to this appeal: IAC for failure to appeal the denial of a mistrial after Juror 29 made prejudicial comments during *voir dire*, IAC for failure to properly pursue a motion to suppress Williams' identification of Washington in

---

[2] 18 Pa.C.S. §§ 901(a); 2702(a)(1), (4); 3701(a)(1)(i)-(iv); 3921(a); 907(b); 6105(c)(2) & 6106(a)(1).

a photographic line-up and his subsequent tainted in-court identification, and IAC for stipulating to SBI for the purposes of the attempted murder sentence and failing to challenge the use of the Deadly Weapon Enhancement (DWE).[3]

The PCRA court held a hearing on the petition at which Washington's trial and appellate counsel, Nicole Spring (Spring),[4] was the sole witness. She first testified regarding the sentencing claims and confirmed that the jury was not asked to make a specific factual finding regarding whether SBI was caused during the attempted murder. After the jury had been discharged, she stipulated that SBI had occurred based on the guilty verdict for the count of aggravated assault causing SBI. The SBI doubled the statutory maximum sentence for the attempted murder and increased the Offense Gravity Score (OGS) from 13 to 14. As a result, the standard range sentence increased from 96 to 114 months to 192 months to the statutory limit of 40 years. Spring testified that she was aware of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. U.S.*, 570 U.S. 99 (2013),[5] at the time of trial, but did

---

[3] *See* 204 Pa. Code § 303.10 (Guideline sentence recommendations: enhancements).

[4] Spring was one of two attorneys from the Lycoming County Public Defender's Office who represented Washington at trial. The other attorney has since retired.

[5] In *Apprendi*, the United States Supreme Court held that any fact other than a prior conviction that increases the maximum sentence for a crime must be submitted to the jury and established beyond a reasonable doubt. In *Alleyne*,
*(Footnote Continued Next Page)*

not consider the applicability to Washington's case. She testified that she did not have a strategic reason for stipulating to the SBI.

The jury was also not asked to determine whether a deadly weapon was used in the commission of the attempted murder or the robbery. Spring said that she did not have a strategic reason at sentencing for agreeing that the DWE applied to the sentencing guidelines for the attempted murder and robbery convictions. For attempted murder, the DWE increased the standard range from 192 months to the statutory limit to 210 months to the statutory limit. She did not discuss or explain the SBI stipulation or the DWE with Washington before sentencing.

Next, Spring testified regarding Juror 29's statements at *voir dire*. When the trial court asked the venire whether anyone was familiar with Washington, Juror 29 said, "I've got a question. . . if I might have seen his name in a professional capacity[.] I don't know if you want me to list that out loud because it might bias other people." Notes of Testimony, PCRA Hearing, 10/5/20, at 16 (quoting Notes of Testimony, Excerpt of Juror 29, 12/13/16, at 2). Later during *voir dire*, Juror 29 stated that he was "a staff physician at the Federal Penitentiary in Allenwood." *Id.* at 17. Spring testified that he

it held that a fact that increases the mandatory minimum sentence for a crime must likewise be found by the jury.

made these statements in open court where the approximately 60 potential jurors could hear them.

At that point, Spring's co-counsel approached the trial court at sidebar and requested a mistrial. He argued that the jury pool was tainted by Juror 29's two answers in open court, as the jurors could infer that Washington had been incarcerated in federal prison, which was untrue. The Commonwealth then requested a cautionary instruction. The trial court denied the request, saying that the instruction might bring attention to an issue that the jurors had missed. It then said, "I'm going to believe that it's not prejudicial to your client. I'm just going to motor forward. We know more about this guy if I can get rid of him I will [sic]." Excerpt of Juror 29 at 5.

Spring testified that she and co-counsel were immediately concerned that Juror 29's comments were prejudicial. As a result, she later argued in Washington's post-sentence motion that the denial of the mistrial was prejudicial error. The trial court denied the post-sentence motion, and after filing an appeal, Spring again included the issue in her concise statement pursuant to Pa. R.A.P. 1925(b). However, she did not include the issue in the brief filed on direct appeal.

Spring testified that she had assigned a newer attorney to research the issues in Washington's appeal but discovered that no work had been done on the brief before the filing deadline. The attorney had not provided any research related to the *voir dire* issue. Spring requested an extension of time

to file the brief but ultimately did not to raise the issue related to Juror 29. Of the five issues she chose to raise on direct appeal, three were evidentiary issues that were reviewed under an abuse of discretion standard and two were found to be waived. Spring testified that she believed that the Juror 29 issue was stronger than the ones that she raised on appeal because the error impacted the entire trial, was not harmless, was properly preserved and was highly prejudicial. She testified that she did not have a strategic reason for not raising the issue on appeal.

Next, Spring addressed the motion to suppress Williams' identification of Washington in a photo line-up and at the preliminary hearing.[6] Williams identified Washington in a photo line-up of eight men in which he was the only subject wearing an orange shirt that appeared to be a prison uniform. The other individuals were wearing street clothes in darker colors. All photos were of black men with beards. Williams identified Washington as his assailant in the photo line-up while he was still at the hospital following the shooting. At the preliminary hearing, Williams identified Washington by referring to his orange jumpsuit.

The suppression motion sought to suppress the identification on the basis that (1) Williams was under the influence of medication at the time that

---

[6] Spring clarified that she may have been assigned to the case after the suppression motion was filed but that she argued the motion at a pre-trial hearing.

made the identification unreliable; and (2) the photo array was overly suggestive based on how Washington was depicted. At the hearing on the motion, Spring orally withdrew the second basis for suppression based on *Commonwealth v. Sanders*, 42 A.3d 325 (Pa. Super. 2011), a case that had been provided to her before the hearing by the Commonwealth. She agreed with the Commonwealth's interpretation of the case to mean that unless there was bad faith conduct on the part of the police conducting the photo line-up, suggestiveness would go to the weight and not the admissibility of the identification.

Spring testified that after receiving the PCRA petition and once again reviewing *Sanders*, she believed she misinterpreted the holding of the case and erroneously withdrew the suppression motion. She said that *Sanders* does not address the suggestiveness of the identification procedure, but rather the mental state of the witness making the identification and the weight of that evidence. Based on re-reading *Sanders*, Spring said that she should not have withdrawn that portion of the suppression motion and that she believed it would have had merit. As a result, she said she did not have a reasonable strategic basis for withdrawing the motion.[7]

---

[7] Spring also testified regarding other claims raised in the petition that Washington has not pursued on appeal.

Following the reception of the evidence, the PCRA court ordered Washington and the Commonwealth to file briefs in support of their positions. On February 2, 2021, the PCRA court issued an opinion and order granting relief on the sentencing claim relating to the stipulation to SBI for the attempted murder charge and denying relief on the remaining claims. Washington proceeded to resentencing on March 18, 2021, and the PCRA court sentenced him to an aggregate term of 31 to 62 years' incarceration. Relevant to this appeal, the PCRA court imposed a sentence of 5 to 10 years' incarceration on the count of aggravated assault with a deadly weapon, a charge for which Washington did not receive a sentence at his original hearing. The PCRA court once again applied the DWE to the charges of attempted murder and robbery.

Washington filed a timely post-sentence motion which the PCRA court denied. He timely appealed[8] and he and the PCRA court have complied with Pa. R.A.P. 1925.

_____

[8] Washington's notice of appeal stated that he was appealing from three orders: the order denying relief on portions of the PCRA petition, the judgment of sentence and the order denying the post-sentence motion. As a result, this Court issued a Rule to Show Cause why the appeal should not be quashed as improperly taken from two separate orders and as untimely from the February 2 order. Washington filed a response citing the PCRA court's February 24, 2021 order scheduling the resentencing hearing and stating that the February 2 order was not final. *See* Order, 2/24/21 ("The Court notes that in its Opinion and Order, the Court gave the Defendant notice of his right to appeal the Court's ruling. However, according to the definition of final order as set forth in Pa.R.Crim.P. 341 [sic], the order of February 2, 2021 is not a
*(Footnote Continued Next Page)*

**II.**

Washington first argues that the PCRA court erred in dismissing his petition and denying him relief on his IAC claims.[9] "To prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." **Commonwealth v. Sarvey**, 199 A.3d 436, 452 (Pa. Super. 2018). "Prejudice, in this context, has been repeatedly stated as requiring proof that but for counsel's action or

_____

final order."). However, "an order granting in part and denying in part all issues raised in [the defendant's] PCRA petition [is] a final order for purposes of appeal." **Commonwealth v. Grove**, 170 A.3d 1127, 1137 (Pa. Super. 2017) (quoting **Commonwealth v. Watley**, 153 A.3d 1034, 1039 n.3 (Pa. Super. 2016)). Pa. R.A.P. 341 has been recently amended to address this precise situation but amendment was released after the PCRA court issued the February 24, 2021 order. **See** Pa. R.A.P. 341(f)(2) ("An order granting sentencing relief, but denying, dismissing, or otherwise disposing of all other claims within a petition for post-conviction collateral relief, shall constitute a final order for purposes of appeal."). The defects in Washington's notice of appeal stem from the PCRA court's erroneous order informing him that the February 2 order was not final. We have previously declined to quash a facially untimely appeal when the late filing was a result of the lower court improperly informing the appellant of his appellate rights, as this misinformation constituted a breakdown in the operation of the court. **Commonwealth v. Flowers**, 149 A.3d 867, 872 (Pa. Super. 2016) (citing **Commonwealth v. Parlante**, 823 A.3d 927 (Pa. Super. 2003)). Thus, we decline to quash Washington's appeal and proceed to the merits of his claims.

[9] "The standard of review of an order dismissing a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error." **Commonwealth v. Weimer**, 167 A.3d 78, 81 (Pa. Super. 2017). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Id.** (citation omitted).

inaction, there was a reasonable probability that the proceeding would have had a different outcome." ***Commonwealth v. Diaz***, 226 A.3d 995, 1007 (Pa. 2020). The "reasonable probability" test is "less demanding than the preponderance standard." ***Commonwealth v. Little***, 246 A.3d 312, 326 (Pa. Super. 2021) (quotations omitted). In addition,

> [a]lthough those principles should guide the process of decision, the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.

***Id.*** (quoting ***Strickland v. Washington***, 466 U.S. 668, 696 (1984)).

When analyzing an IAC claim, "failure to prove any of these prongs is sufficient to warrant dismissal of the claim without discussion of the other two." ***Commonwealth v. Robinson***, 877 A.2d 433, 439 (Pa. 2005) (citation omitted). Counsel cannot be ineffective for failing to pursue a meritless claim. ***Commonwealth v. Rykard***, 55 A.3d 1177, 1190 (Pa. Super. 2012). Finally, we presume that counsel has rendered effective assistance. ***See Commonwealth v. Treiber***, 121 A.3d 435, 445 (Pa. 2015).

## A.

First, Washington argues that Spring was ineffective for failing to challenge on direct appeal the trial court's denial of a mistrial after Juror 29

made prejudicial statements in front of the entire jury panel during *voir dire*.[10]

He argues that Juror 29's statements carried the false implication that he had

been incarcerated in a federal prison at some point and that the jury panel

was tainted by hearing those statements. He contends that the trial court

erred by not dismissing the panel and beginning *voir dire* anew, and that if

Spring had raised this issue in his direct appeal, he would have been granted

a new trial.[11]

**1.**

We first consider whether Washington's underlying claim has arguable

merit. It is well-established that a criminal defendant is entitled to a fair trial

in front of an impartial jury and "the jury selection process is crucial to the

preservation" of that right. ***Commonwealth v. Delmonico***, 251 A.3d 829,

839 (Pa. Super. 2021).

Washington relies on ***Commonwealth v. Fisher***, 591 A.2d 710 (Pa.

1991), and ***Commonwealth v. Santiago***, 318 A.2d 737 (Pa. 1974), in

support of his position that Juror 29's statements prejudiced the jury pool and

violated his right to a fair trial in front of an impartial jury. In ***Fisher***, the

---

[10] "The process of selecting a jury is committed to the sound discretion of the trial judge and will be reversed only where the record indicates an abuse of discretion, and the appellant carries the burden of showing that the jury was not impartial." ***Commonwealth v. Noel***, 104 A.3d 1156, 1169 (Pa. 2014).

[11] The Commonwealth has not filed a brief on appeal and instead has relied upon the PCRA court's opinions in requesting that we affirm.

prosecution asked a potential juror during *voir dire* whether he had read anything in the news concerning the defendant's prior conviction in federal court. **Fisher**, **supra**, at 711. The juror responded that he had read about the case and was subsequently seated on the jury. **Id.** After the trial, the defendant's federal conviction was reversed on appeal. Our Supreme Court concluded that even though the question was relevant at the time of *voir dire*, after the defendant's conviction was overturned, it was no longer proper and became unduly prejudicial. The Court remanded the case concluding that "[w]ith such a fact lodged in the jury box, its effect inestimable, a new trial [was] required." **Id.**

In **Santiago**, a prosecution witness approached one of the alternate jurors before the panel was sworn and told her that the defendant had "killed an innocent boy and it [wasn't] the first one he [had] killed." **Santiago**, **supra**, at 739. The alternate juror reported the incident to the tipstaff in front of three jurors who were seated on the case. The trial court dismissed the alternate juror but interviewed the other three jurors and determined that they could remain impartial. **Id.** Our Supreme Court reversed, concluding that a mistrial should have been granted because the three jurors had heard improper and prejudicial information. **Id.** at 740. It noted that it had previously granted new trials "even though there was no certainty that any improper prejudicial information had actually been communicated to any jurors." **Id.** at 739 (citing **Commonwealth v. Stewart**, 295 A.2d 303 (Pa.

1972); ***Commonwealth v. Bobko***, 309 A.2d 576 (Pa. 1973)). The Court emphasized that the defendant was entitled to a trial in front of an impartial and indifferent jury that had not been subjected to any outside influence. ***Id.***

Here, Juror 29 first stated in front of the rest of the panel that he may have seen Washington's name "in a professional capacity," but he was not sure whether he should explain the circumstances "because it might bias other people." Excerpt of Juror 29 at 2. The PCRA court asked if he could remain impartial despite this information and Juror 29 replied that he could. Later, again in open court, Juror 29 said that he was a physician at the federal penitentiary in Allenwood. Trial counsel immediately moved for a mistrial on the basis that Juror 29's statements tainted the jury pool by creating the impression that Washington had served time in federal prison. The Commonwealth then requested that the trial court issue a cautionary instruction that Washington was presumed innocent and had never been in federal prison. The trial court expressed concern that an instruction would draw more attention to the issue. It then stated: "Well, I'm going to deny the request. I'm going to believe that it's not prejudicial to your client. I'm just going to motor forward." ***Id.*** at 5.

In denying relief on this issue, the PCRA court reasoned:

The issue presented here is essentially asking this Court to ensure that every potential juror be blissfully unaware of the realities of living in a modern society, which, to quote ***Dowd***, establishes an "impossible standard" for jurors to maintain. [***Irvin v.***] ***Dowd***, 366 U.S. 717, 721 (1961). We acknowledge that Juror 29's statements were not factual as [Washington] has never served a

- 13 -

federal prison sentence. There is no indication that the jurors connected the potential juror's statements to one another casting a negative mark on [Washington]. Further, nothing in the record showed that any of the selected jurors for [Washington's] trial had any notion of what Juror 29's statements meant or were influenced to convict by them or that Juror 29 was certain that he had seen the [Washington]. This Court does not believe that these statements rise to the level of seriousness as those found in *Santiago* or *Fisher* nor were they severe enough to make the jurors incapable of objectivity, therefore, relief on this issue is denied.

Opinion and Order, 2/2/21, at 13 (cleaned up). We disagree with this analysis.

*Santiago* and *Fisher*, as well as the cases cited therein, stand for the proposition that a defendant is deprived of his right to trial by a fair and impartial jury when the panel has been exposed to prejudicial information about the defendant by outside influence. Central to the concept of due process is the requirement that a jury's verdict "be based upon the evidence developed at the trial . . . regardless of the heinousness of the crime charged, the apparent guilt of the offender or the station in life which he occupies." *Turner v. Louisiana*, 379 U.S. 466, 472 (1965) (cleaned up).

Here, any of the jurors who were eventually seated for Washington's trial could have had the incorrect and prejudicial impression that he had formerly been convicted of a crime and incarcerated in a federal prison.[12] The

_____

[12] We note that the charges of persons not to possess and carrying a firearm without a license were bifurcated from the charges heard by the jury, as Washington's prior conviction that disqualified him from possessing a firearm may have been prejudicial to the jury while it considered its verdicts on the other charges.

trial court took no steps to remedy the misimpression created by Juror 29's statements or to ensure that the remaining jurors had not drawn any conclusions based on those statements. In *Santiago* and *Fisher*, the jurors were questioned to determine whether they could remain impartial, considering the prejudicial information they had learned about the defendants. Even despite this prophylactic measure, on appeal, our Supreme Court held that the defendants were entitled to new trials because of the potential effect of the prejudicial information on the jury's deliberations.

In its opinion, the PCRA court here opined that no new trial was warranted because there was no evidence of record that the jurors understood Juror 29's statements to mean that Washington had served time in federal prison. However, it is impossible to tell whether this absence of record evidence is the result of the denial of a cautionary instruction and the lack of further *voir dire* on the issue at the time it arose. Put simply, the jurors were not given the opportunity to explain whether they had formed an opinion of Washington based on Juror 29's statements or whether they could disregard those statements in deliberations. They were also not told that Juror 29's impression was false and that Washington had never served time in federal prison. The trial court dismissed Washington's objection by saying, "I'm going to believe that it's not prejudicial to your client," and declined to offer a cautionary instruction to the panel. Excerpt of Juror 29 at 5.

*Irvin v. Dowd*, 366 U.S. 717 (1961), cited by the PCRA court, does not compel a different conclusion. There, the defendant challenged the constitutionality of his conviction when eight of the jurors at his trial expressed during *voir dire* that they believed he was guilty based on the extensive media coverage of his crimes. *Id.* at 727-28. The United States Supreme Court noted that jurors need not be completely ignorant to the facts of a case if they could set aside any initial impressions and evaluate the defendant's guilt based upon the evidence adduced at trial. *Id.* at 722-23. However, when the media coverage of the crime and investigation was extensive, extremely negative and created widespread public opinion that the defendant was guilty, "the build-up of prejudice [was] clear and convincing." *Id.* at 725. Even though the jurors in that case stated on further questioning that they could be impartial, the Court concluded that under the circumstances, "such a statement of impartiality can be given little weight." *Id.* at 728.

*Dowd* addressed a motion for change of venue when media coverage of the case was so extensive within the venue county as to taint the entire jury pool. Much of the pretrial media coverage was based on the facts of the crime at hand, the defendant's confession, and other evidence that would eventually be heard at trial. Here, Juror 29's statements, even if his impression about Washington had been true, contained information that was unrelated to the crime and would not have been admitted at trial. Further, the *Dowd* Court concluded that not even *voir dire* regarding the jurors' ability

to set aside their opinions was sufficient to ensure that the defendant was tried by an impartial jury. Here, the trial court took no steps to ensure that the potential jurors did not draw any conclusions or form any opinions based on Juror 29's statements, nor did it issue a cautionary instruction. Thus, we conclude there is arguable merit to Washington's argument that he would have been entitled to relief on direct appeal if Spring had challenged the denial of a mistrial.

**2.**

Next, we conclude that Spring had no reasonable strategic basis for omitting this issue from Washington's direct appeal in favor of raising other issues for which he was not granted relief. She candidly testified at the PCRA hearing that she elected not to raise this issue on direct appeal because the deadline for filing the brief was approaching and she did not have time to research and brief the issue. She had assigned the case to another attorney in her office who did not complete any research related to the jury selection issue, and in an effort to file a timely brief, she declined to raise this issue. She further said that she believed that the issues she did raise on direct appeal, which were related to the admission of evidence at trial and a restriction on the defense's closing argument, were simply not as strong as the *voir dire* issue. Thus, because the decision not to raise this issue was not motivated by its merits or any strategic whittling of the issues to be argued on appeal, Washington has satisfied this prong of the IAC test.

**3.**

Finally, we consider whether there was a reasonable probability that Washington was prejudiced by the omission of this issue from his direct appeal. When appellate counsel's representation does not completely deprive a defendant of appellate review but rather narrows the issues to be decided, this Court considers whether prejudice resulted under the **Strickland** standard. **See Commonwealth v. Rosado**, 150 A.3d 425, 433 (Pa. 2016). Again, under **Strickland**, a "reasonable probability" standard of prejudice is "less demanding than the preponderance standard." **Little**, **supra**, at 326.

As we noted when addressing the arguable merit of this claim, Washington's motion for a mistrial was based on the potential for prejudice created by Juror 29's comments in open court in front of the entire jury pool. Our Supreme Court has granted defendants new trials in similar situations in which jurors were given prejudicial, inadmissible information about the defendant that could have affected the verdict by denying the defendants their presumption of innocence. **Bobko**, **supra**, at 577; **Stewart**, **supra**; **Fisher**, **supra**; **Santiago**, **supra**. In granting the new trial in **Stewart**, our Supreme Court recognized that even in the absence of direct evidence of prejudice the "potentialities of harm" were too great to conclude that the defendant received a fair trial. **Stewart**, **supra**, at 305-06. Because Washington's remedy, if he had been successful in raising this claim on direct appeal, would have been a

new trial, he has established that he was prejudiced by Spring's failure to litigate the issue.

Therefore, Washington has satisfied the three prongs of the IAC test and established that Spring was ineffective for failing to raise this claim in his direct appeal. Based on Spring's ineffectiveness, he requests a new trial. However, because the IAC resulted in Washington losing the opportunity to raise this issue on direct appeal, the correct remedy is to restore his direct appeal rights *nunc pro tunc* to allow him to fully litigate the issue. ***See Little***, ***supra***, at 331-32 (holding that granting relief on the substantive error that should have been raised on direct appeal would be outside of this Court's jurisdiction when reviewing an IAC claim for PCRA relief). Accordingly, we reverse the portion of the PCRA court's order denying relief on this claim and direct that Washington may file a new notice of appeal within 30 days of the date of this memorandum. In that appeal, he may solely raise the issue related to the trial court's denial of a mistrial based on Juror 29's statements.

**B.**

Next, Washington argues that Spring was ineffective for withdrawing the portion of the pretrial motion to suppress identification evidence that was based on the suggestiveness of the photo line-up and the subsequent

identification at the preliminary hearing.[13]  He contends that Spring withdrew that portion of the motion based on an incorrect reading of *Sanders*, *supra*, and that if she had properly pursued suggestiveness as a ground for suppression, the trial court would have been compelled to grant the motion. He points out that of the eight individuals depicted in the array, Washington was the only person wearing "a bright orange shirt that appears to be prison issue," while the other individuals were wearing "street clothing." Washington's Brief at 22.  All photos were of black men with beards.

We begin by considering whether this issue has arguable merit.  Initially, we agree that Spring's apparent reliance on *Sanders* as the basis for withdrawing this portion of the suppression motion was erroneous.  *Sanders* addressed whether a witness's prior identification of the defendant was sufficiently reliable to be admissible at trial when he made the identification while hospitalized and in and out of consciousness.  *Sanders*, *supra*, at 328. This Court concluded that in the absence of police misconduct that rendered the photo line-up procedure unduly suggestive, the victim's condition when he made the identification bore on the weight of that evidence and not its admissibility.  *Id.* at 330-31.  The defendant in *Sanders* did not argue that

---

[13] "An appellate court's standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct."  *Commonwealth v. Postie*, 110 A.3d 1034, 1039 (Pa. Super. 2015) (citation omitted).

the procedure the police used in assembling or conducting the photo array was improper or suggestive. As such, Spring's interpretation of the case was unreasonable and **Sanders** did not support her decision to withdraw this portion of the suppression motion.

Nevertheless, we conclude that Spring was not ineffective because there was no arguable merit to the suppression motion when the suggestiveness issue is considered under the relevant case law. "In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable." **Commonwealth v. Milburn**, 191 A.3d 891, 899 (Pa. Super. 2018) (citation omitted). Suppression of an identification is proper only when the procedure is "**so impermissibly suggestive** as to give rise to a very substantial likelihood of irreparable misidentification." **Id.** at 900 (citation omitted, emphasis in original).

Not all variances between photos in an array are grounds for suppression. "Photographs used in line-ups are not unduly suggestive if the suspect's picture does not stand out more than the others, and the people depicted all exhibit similar facial characteristics." **Commonwealth v. Mbewe**, 203 A.3d 983, 986-87 (Pa. Super. 2019) (citation omitted); **see Commonwealth v. Davis**, 17 A.3d 390, 394 (Pa. Super. 2011) (holding that photo array was suggestive when it contained three photos, one of which was a third party already known to the witness, and the other an individual who

appeared markedly different from the defendant). While "[e]ach person in the array does not have to be identical in appearance," the photos "should all be the same size and should be shot against similar backgrounds." *Commonwealth v. Kendricks*, 30 A.3d 499, 504 (Pa. Super. 2011) (citations omitted).

Upon review of the photo array used in this case, we conclude that it was not unduly suggestive. The eight photos are similar in size and have plain backgrounds, though five of the backgrounds are grey and three are blue. Each photo depicts a black male with facial hair and a close-cropped haircut. The individuals have similar facial characteristics. Washington argues that the photo line-up is unduly suggestive because he is the only individual depicted in an orange shirt that appears to be a prison uniform, while the other individuals are wearing what appear to be street clothing in more neutral colors. However, only a small part of the shoulder area of the shirt is visible in the picture and there are no markings in the photograph that identify the shirt as prison-issued. Finally, Washington does not argue that the manner in which the array was presented to Williams was unduly suggestive. Under these circumstances, we cannot conclude that the identification was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Milburn*, *supra* (emphasis omitted). Because

counsel cannot be found ineffective for failing to pursue a meritless claim, Washington's IAC claim related to the suppression motion fails.[14]

## III.

Washington's final issues on appeal are challenges to the legality and discretionary aspects of his sentence following his resentencing hearing on March 18, 2021. At his original sentencing hearing in 2017, the trial court sentenced him as follows:

> **Count 1** – Attempted Murder causing SBI, 20 to 40 years' incarceration
>
> **Count 3** – Aggravated Assault with deadly weapon, 3 to 6 years' incarceration
>
> **Count 4** – Robbery, 10 to 20 years' incarceration
>
> **Count 8** – Persons Not to Possess, 5 to 10 years' incarceration
>
> **Count 9** – Carrying a Firearm without a License, 1 to 2 years' incarceration
>
> **Count 10** – Possession of an Instrument of Crime, 1 to 2 years' incarceration

*See* Sentencing Order, 2/14/17, at 1-3. The sentences for counts 3 and 10 were imposed concurrently to the sentence at count 1. The other sentences were imposed consecutively for an aggregate sentence of 36 to 72 years'

---

[14] Because we conclude that the photo line-up was not unduly suggestive, we need not consider whether Williams' later in-court identification of Washington was tainted by the line-up procedure. ***Commonwealth v. Fulmore***, 25 A.3d 340, 349 (Pa. Super. 2011).

incarceration. The trial court determined that the remaining charges merged for sentencing purposes.

Following the evidentiary hearing, the PCRA court granted Washington relief on his IAC claim challenging the stipulation to SBI for sentencing on the attempted murder count. At the resentencing hearing, it imposed the following sentence:

**Count 1** – Attempted Murder, 10 to 20 years' incarceration

**Count 3** – Aggravated Assault with deadly weapon, 5 to 10 years' incarceration

**Count 4** – Robbery, 10 to 20 years' incarceration

**Count 8** – Persons Not to Possess, 5 to 10 years' incarceration

**Count 9** – Carrying a Firearm without a License, 1 to 2 years' incarceration

*See* Resentencing Order, 3/18/21, at 1-2. All of the sentences were imposed consecutively for an aggregate sentence of 31 to 62 years' incarceration. Thus, the PCRA court altered the original sentence by reducing the sentence at count 1, increasing the sentence at count 3, finding that count 10 merged and imposing the sentence at count 3 consecutively rather than concurrently.

**A.**

First, Washington contends that his sentence is illegal because the PCRA court applied the DWE to the attempted murder and robbery charges even though the jury did not make a specific finding that a deadly weapon was used in the commission of those crimes. He contends that the application of the

- 24 -

DWE under these circumstances violates **Apprendi** and **Alleyne**, **supra**, rendering his sentence illegal.

This Court has previously rejected the argument that the DWE implicates the principles announced in **Apprendi** and **Alleyne**. **See Commonwealth v. Buterbaugh**, 91 A.3d 1247, 1270 n.10 (Pa. Super. 2014) (*en banc*).[15]   There, we determined that "[i]f the [DWE] applies, the sentencing court is required to raise the standard guideline range; however, the court retains the discretion to sentence outside the guideline range." **Id.** Because the application of the sentencing guidelines remains within the court's discretion and the DWE does not alter the minimum or maximum sentence that applies to an offense, we determined that **Apprendi** and **Alleyne** are not violated when the sentencing court makes the factual finding that triggers the DWE. **Id.**  This issue has no merit.[16]

_____

[15] The Court addressed the issue, which implicates the legality of a sentence, *sua sponte*.

[16] Washington cites **Commonwealth v. Monarch**, 200 A.3d 51 (Pa. 2019), in support of his assertion that sentencing enhancements must be submitted to the jury.  However, the "enhancement" our Supreme Court analyzed in **Monarch** was an increased *mandatory minimum* sentence, which falls squarely within the holding of **Alleyne**. **Id.** at 57.  The high Court did not analyze a *discretionary* sentencing enhancement applied to the sentencing guidelines, such as the DWE, as our Court did in **Buterbaugh**.  The same reasoning applies to **Commonwealth v. Munday**, 78 A.3d 661, 666 (Pa. Super. 2013), which analyzed a mandatory minimum sentencing scheme for drug offenses committed with firearms.  Finally, **Commonwealth v. Russell**, 209 A.3d 419, 424 (Pa. Super. 2019), does not support Washington's argument as it merely reiterates the difference between a discretionary and
*(Footnote Continued Next Page)*

**B.**

Finally, we address Washington's challenge to the discretionary aspects of his sentence.[17] "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." *Commonwealth v. Conte*, 198 A.3d 1169, 1173 (Pa. Super. 2018) (citation omitted). An appellant must preserve his claims at the time of sentencing or in a post-sentence motion, file a timely notice of appeal, include a statement of reasons for allowance of appeal pursuant to Pa. R.A.P. 2119(f) in his brief, and raise a substantial question for review. *Id.* Washington fulfilled the first three requirements by filing a timely post-

_____

mandatory sentencing scheme under *Alleyne*. *Id.* ("We have previously held that, where a trial court imposes sentence in accordance with the guidelines and does not sentence in accordance with a mandatory minimum sentencing scheme, an appellant is not entitled to relief under *Alleyne*.").

[17] Our standard of review is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias[,] or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Wallace*, 244 A.3d 1261, 1278–79 (Pa. Super. 2021) (citation omitted).

sentence motion seeking modification of his sentence, a timely notice of appeal, and including a Pa. R.A.P. 2119(f) statement in his brief.

We now turn to whether he has raised a substantial question for review. "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Clarke*, 70 A.3d 1281, 1286–87 (Pa. Super. 2013) (citation omitted). Washington contends that the PCRA court abused its discretion in imposing a sentence of incarceration at count 3 without placing adequate reasons on the record for the increased sentence following his successful PCRA petition, thus raising a presumption of vindictiveness.[18] We have previously held that a claim of vindictiveness on resentencing presents a substantial question allowing us to proceed to review the merits of his claim. *Commonwealth v. Tapp*, 997 A.2d 1201, 1203 (Pa. Super. 2010).

Washington cites *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969), *rev'd on other grounds by* *Alabama v. Smith*, 490 U.S. 794 (1989), for the

---

[18] Washington maintained in his post-sentence motion and on appeal that he was not sentenced on count 3 at his original sentencing hearing. However, the record reflects that Washington was sentenced to 3 to 6 years' incarceration on count 3, to be served concurrently to the sentence for attempted murder. *See* Sentencing Order, 2/14/17, at 2-3. On resentencing, he was sentenced to 5 to 10 years' incarceration on this count, to be served consecutively. *See* Resentencing Order, 3/18/21, at 1-2. Because the PCRA court did increase the sentence on this charge, we will consider his claim.

proposition that a court may not impose a higher sentence following a defendant's successful appeal in retaliation for the defendant's choice to exercise his appellate rights. The United States Supreme Court explained:

> [i]n order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.

*Id.* at 726. The same principles apply when a defendant is granted a new sentencing hearing rather than a new trial. *Commonwealth v. Barnes*, 167 A.3d 110, 123 (Pa. Super. 2017) (*en banc*).

In *Barnes*, the defendant was sentenced to 20 to 40 years' incarceration for attempted murder and 2.5 to 5 years' incarceration each for aggravated assault and kidnapping, for an aggregate term of 25 to 50 years of imprisonment. *Id.* at 115. On appeal, this Court reversed and remanded for resentencing, finding that the aggravated assault charge should have merged with the attempted murder charge. *Id.* On remand, the trial court sentenced the defendant to 20 to 40 years' incarceration for attempted murder and 5 to 10 years' incarceration for kidnapping, once again resulting in an aggregate term of 25 to 50 years' imprisonment. *Id.* The defendant appealed and argued that the trial court had acted vindictively in increasing the sentence imposed on the count of kidnapping.

We held that the overall sentencing scheme and not the sentence for the individual charge of kidnapping was the relevant consideration for evaluating a claim of vindictiveness. *Id.* at 124. "Indeed, a trial court properly may resentence a defendant to the same aggregate sentence to preserve its original sentencing scheme . . . [I]n most circumstances, a judge can duplicate the effect of the original sentencing plan by adjusting the sentences on various counts so that the aggregate punishment remains the same." *Id.* We held that the defendant could not succeed on a claim of vindictiveness when his aggregate sentence remained the same following resentencing, even though the sentencing court increased the sentence on an individual charge. *Id.* at 125.

The facts herein are analogous. At the first sentencing hearing, the trial court imposed an aggregate term of 36 to 72 years of incarceration. At count 3, it sentenced him to 3 to 6 years of incarceration to be served concurrently to the sentence for attempted murder, stating, "I don't see any purpose to be served in giving you an additional sentence on [that] offense[]." Notes of Testimony, Sentencing Hearing, 2/14/17, at 35-36.

After granting relief on Washington's illegal sentencing claim, the PCRA court imposed an aggregate sentence of 31 to 62 years' incarceration. The new sentencing scheme included a sentence of 5 to 10 years of consecutive incarceration on count 3. At resentencing, the PCRA court recognized that Washington had "used his time productively and continues to use it

productively" while incarcerated. Notes of Testimony, Resentencing Hearing, 3/18/21, at 13. After noting the serious nature of the charges and the injuries to the victim, the PCRA court explained

> I just felt that this was the type of case that justified that type of sentence. And where I don't mean to diminish anything that Mr. Washington has done because I think that that's great. I'm grateful for him. But I still think that that length of sentence was appropriate in light of the nature of the offense that was committed . . . I appreciate everything he's done since he was sentenced. But I can't help but think that the sentence that I imposed before reflected what I perceived to be the appropriate sentence in this case.

*Id.* at 14. Notwithstanding those comments, the aggregate sentence imposed at resentencing was lower than the original sentence.

In *Barnes*, we rejected the defendant's attempt to frame the vindictiveness issue in the context of a single charge and instead examined the aggregate sentencing scheme. We concluded that it was within the trial court's discretion to craft a new sentencing scheme that maintained the integrity of the sentence previously imposed, and such a sentencing scheme did not constitute vindictiveness. Here, despite the alteration to the sentence at count 3, Washington received a lower aggregate sentence following his successful PCRA petition. The circumstances do not evidence any vindictiveness by the PCRA court on resentencing. No relief is due.

Judgment of sentence affirmed in part and reversed in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/21/2021